# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

JOEL MARTIN, on his own behalf, and as )
Next Friend for C.M., a minor, )
                                                Plaintiffs, )
                                              vs. ) Case No. 4:17-cv-00073-FJG
NORTH KANSAS CITY SCHOOL )
DISTRICT, et al., )
                                             Defendants. )

## ORDER

Currently pending before the Court is Defendant North Kanas City School District ("NKC's") Motion to Dismiss (Doc. # 12); NKC's Motion for Leave to File Excess Pages (Doc. # 16); Plaintiff's Motion for Leave to File Supplemental Legal Support (Doc. # 48) and Stephen Freeland's Motion to Withdraw as Counsel for Defendants (Doc. # 69).

## I. BACKGROUND

This case involves allegations that Samuel Waltemath, a former employee of the North Kansas City School District, sexually assaulted and raped plaintiff C.M., a minor student. Waltemath was C.M.'s seventh grade teacher. Plaintiffs filed a three count Complaint against NKC, Waltemath and five NKC employees. Count I alleges a violation of Title IX and is asserted against the District only. Count II alleges a violation of the Missouri Human Rights Act and is asserted against the District and Waltemath. Count III asserts a Negligence claim against various district employees. The District has moved to dismiss Count II on the basis that the District is not a "person" as that term is defined in the MHRA and thus is not subject to the MHRA's public

accommodation provision. Secondly, the District argues that plaintiffs' underlying charge relating to Watemath's alleged acts was not timely filed with the MCHR as required under the MHRA. The District also argues that none of the alleged acts occurred on the District's premises, so plaintiffs have failed to allege a denial of public accommodation by the District. Finally, the District alleges that plaintiffs have failed to meet minimum pleading standards to state a claim against the District for any conduct by C.M.'s peers as a separate claim.

## II. STANDARD

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

### III. DISCUSSION

**A. Is NKC Considered a "Person" Under MHRA's Public Accommodation Provision?**

Mo.Rev.Stat. § 213.065 Discrimination in public accommodations states in part:

> 1. All persons within the jurisdiction of the state of Missouri are free and equal and shall be entitled to the full and equal use and enjoyment within this state of any place of public accommodation, as hereinafter defined, without discrimination or segregation because of race, color, religion, national origin, sex, ancestry, or disability.
>
> 2. It is an unlawful discriminatory practice for any *person*, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation, as defined in section 213.010 and this section, or to segregate or discriminate against any such person in the use thereof because of race, color, religion, national origin, sex, ancestry, or disability.

Mo. Rev. Stat. § 213.065 (Emphasis added).

> "Person" is defined in the statute as:
>
> [O]ne or more individuals, corporations, partnerships, associations, organizations, labor organizations, legal representatives, mutual companies, joint stock companies, trusts, trustees, trustees in bankruptcy, receivers, fiduciaries, or other organized groups of persons.

Mo.Rev.Stat. § 213.010 (14).

NKC argues that in the Missouri employment discrimination statute, the statute prohibits "employers" from discriminating. The statute defines an "employer" as "the state, or any political or civil subdivision." Mo.Rev.Stat. § 213.010(8). NKC states that Missouri's public school districts have been held to be "political subdivisions" of the state and thus they are subject to the employment discrimination statute and can be liable for violations. NKC argues that the discrimination in public accommodation

3

statute does not use the term "employer" but uses the term "person." The definition of person does not include "the state, or any political or civil subdivision of the state". Thus, NKC argues that the failure to include "the state, or any political or civil subdivision of the state" in the definition of "person" is critical because school districts are political subdivisions of the state. NKC argues that including the listing of political subdivisions in one definition, while excluding it in the definition of "person" just a few lines later in the same statute is a "clear sign that such entities were not intended by the Missouri legislature to be included within the definition of "person" for purposes of the MHRA's public-accommodation provision." (NKC's Motion to Dismiss, p. 5). In opposition, plaintiffs state that the MHRA broadly defines "person" as "one or more individuals", "associations", "organizations", "or other organized groups of persons." Plaintiff argues that these definitions are extremely broad and must be interpreted in favor of including NKC within the broad coverage of the MHRA. Additionally, plaintiffs argue that the MHRA provides specific exclusions from the rules that apply to places of public accommodation and public school districts are not excluded from such public accommodation rules.

In Consolidated School Dist. No. 1 of Jackson County v. Bond, 500 S.W.2d 18 (Mo.App. 1973), the Court stated:

> Under the Constitution of 1875, the public schools have been intrenched as a part of the state government, and it is thoroughly established that they are an arm of that government and perform a public or governmental function, and not a special corporate or administrative duty. They are *purely public corporations*, as has always been held of counties in this state . . ..

Id. at 19 (quoting City of Edina to Use of Pioneer Trust Co. v. School Dist. of City of Edina, 267 S.W. 112, 115 (Mo. banc. 1924)). Similarly, in Doe ex rel. Subia v. Kansas

4

City Missouri School Dist., 372 S.W.3d 43 (Mo.App.2012), the Court considered whether the prohibition on discrimination in places of public accommodation covered a claim against a school district for sex discrimination based on student-on-student sexual harassment. In analyzing this question, the Court found that a public school is a public accommodation. The Court stated:

> [a]lthough the legislature did not define the terms "subdivision" and "public corporations" in the statute, Missouri courts have long considered public school districts to be both subdivisions of this state and public corporations. . . .We presume that, when the legislature enacted Section 213.010(15)(e), it was aware that judicial opinions had interpreted the terms "subdivision" and "public corporation" to include public school districts and intended the terms to be construed in the statute consistently with those opinions.

Id. at 48. Thus, because public school districts have been defined as public corporations and because the definition of a "person" in the MHRA includes "corporations." The Court finds that the NKC School District is a person subject to the MHRA.

**B. Timeliness of Plaintiffs' Charge of Discrimination**

NKC states that in order to initiate a claim under the MHRA, a party must timely file an administrative complaint with the MCHR and either adjudicate the claim through the MCHR or obtain a right-to-sue letter. NKC states that the verified complaint must be filed within one hundred and eighty (180) days of the alleged discriminatory act. Mo.Rev.Stat. § 213.075.1. Plaintiffs filed their Charge of Discrimination against NKC on May 24, 2016, alleging that C.M. had been raped and sexually assaulted in May 2015 by Mr. Waltemath, while he was a NKC employee. NKC argues that the 180 day period of time pre-dating the filing of the May 24, 2016 charge began on November 25, 2015. Thus, NKC argues that any acts occurring *before* November 26, 2015 would be untimely for purposes of the charge filed by plaintiffs, because plaintiffs alleged that the

5

sexual assault and rape occurred in May 2015 and Waltemath was arrested in the August/September 2015 timeframe.

In opposition, plaintiffs state that filing a charge within 180 days of the discriminatory act is not a prerequisite to filing suit. In Farrow v. Saint Francis Medical Center, 407 S.W.3d 579 (Mo. banc 2013), the Court addressed whether there was a requirement that a plaintiff's claim be timely filed with the Commission as a prerequisite to filing a court action. The Missouri Supreme Court found:

> Thus, the only requirements imposed by section 213.111 to file a claim under the MHRA are that: (1) an employee file a charge with the Commission prior to filing a state court action; (2) the Commission issue a right to sue letter; and (3) the state court action be filed within ninety days of the issuance of the right to sue letter but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party. The statute does not read, "If, after one hundred eighty days from the filing of a *timely* complaint. . . ." This Court will not read such a requirement into the plain statutory language.

Id. at 591. See also Moore v. Helget Gas Products, Inc., No. 4:14-CV-1292 (CEJ), 2015 WL 1530670 (E.D.Mo. Apr. 6, 2015)("In Farrow, the Missouri Supreme Court rejected an argument that a plaintiff's failure to file a charge of discrimination within the 180-day time limit imposed by § 213.075.1 created a jurisdictional barrier to a subsequent court action."). In State ex rel. Diehl v. O'Malley, 95 S.W.3d 82 (Mo.banc 2003), the Court explained the particulars of the MHRA:

> Missouri Human Right Act actions have a separate, alternate path available to a complainant. That path is set forth in section 213.111, which allows [the plaintiff] to opt out of the commission's proceedings by asking for [a] letter indicating that she has a right to bring a civil action (commonly referred to as a "right to sue" letter). When she requests the letter, after 180 days from the filing of her complaint with the commission, the commission is obligated to issue the letter if the commission has not completed its administrative processing. At this point, the complainant has the right to bring an action for damages or other relief against the respondent within 90 days of the letter, but not more than two years after

6

the discrimination allegedly took place, in the circuit court "in any county in which the unlawful discriminatory practice is alleged to have occurred. . . ." Section 213.111.

Id. at 90.

In the instant case, the Court finds that although C.M. did not file her charge against NKC within 180 days of when the alleged assault/rape occurred, this does not preclude her MHRA claim in this court. Plaintiffs in this case filed a charge with the Commission, the Commission issued a notice of right to sue on January 24, 2017 and plaintiffs filed the instant suit on February 2, 2017, well within ninety days of the issuance of the right to sue letter and within two years of when the alleged harassment of C.M. began in April of 2015.

### C. **Location of Alleged Harassment**

NKC argues that the Court should dismiss the portion of Count II pertaining to Mr. Waltemath's misconduct because none of the conduct is alleged to have taken place on District premises and thus plaintiffs have failed to allege a denial of public accommodation. In opposition, plaintiffs state that the MHRA is intended to be broadly construed and there is no requirement that the harassment occur "on-premises." Additionally, plaintiffs state that the MHRA provides that it shall be "an unlawful discriminatory practice for [NKC] directly or indirectly . . . discriminate against [C.M.] . . because of . . . sex . . ." Mo.Rev.Stat. § 213.065.2. Plaintiffs state that as alleged in the Complaint, NKC failed to adequately investigate, hire and control its teacher, Samuel Waltemath, who was put in direct and regular contact with C.M. as her teacher at NKC. (Petition, ¶¶ 17, 20, 21,22, 27, 28, 29, 30, 31, 32). Plaintiffs allege that while a teacher at NKC, Waltemath, groomed C.M. via social media, text message and cell phone in

7

violation of NKC policies.  Plaintiffs state that all of these allegations support their claim that C.M. was subjected to direct and indirect discrimination with regard to her ability to use and enjoy her public school.  Additionally, plaintiffs state that NKC's own policies state that sexual harassment is prohibited whether it occurs on or off district property.  The policy specifically states:

> In accordance with this policy and as allowed by law, the district will investigate and address discrimination, harassment and retaliation that negatively impact the school environment, *including instances that occur off district property* or are unrelated to the district's activities.

(NKC Policy, p. 1, Doc. 15-1).

In reply, NKC states that it does matter whether the harassment took place on or off District premises, because in the Title IX context, a district's degree of control over the harasser and the environment in which the harassment occurs is relevant for liability purposes.  The District states that it "cannot follow every student and employee off campus, and therefore should not be liable for the actions committed by them in contexts and environments that are outside the District's control."  (Reply Suggestions, p. 13).  With regard to its policies, the District states that they "simply provide that the District will, *after the fact*, take corrective action against *persons* who are discovered to have committed certain prohibited acts. . . .However, this recognition does not provide a basis for holding the District itself *legally* responsible for third-parties' actions that are committed when the District is not around."  Id. at 14.

In <u>Doe ex rel. Subia</u>, 372 S.W. 3d 43, the Court considered what the standard should be for a public school district in a case of student-on-student sexual harassment under the MHRA.  The Court in that case found that a school district may be held liable

8

for student-on-student sexual harassment under Mo.Rev.Stat. § 213.065.2 where the plaintiff alleges and proves:

> (1) he is a member of a protected group; (2) he was subjected to unwelcome sexual harassment; (3) his gender was a contributing factor in the harassment; (4) the harassment refused, withheld from, or denied, or attempted to refuse, withhold from, or deny him any of the accommodations, advantages, facilities, services, or privileges made available in the public school, or segregated or discriminated against him in the use thereof on the grounds of race, color, religion, national origin, sex, ancestry, or disability; (5) the public school district knew or should have known of the harassment and failed to take prompt and effective remedial action.

Id. at 54. In the Subia case, the plaintiff alleged that he was sexually harassed and assaulted on multiple occasions by another male student in the boys' restroom and that this harassment occurred because of his gender. The Court in that case found that the plaintiff had adequately stated a cause of action by pleading that the school administrators, teachers and paraprofessionals responsible knew of the perpetrator's inappropriate and sexualized behavior and despite this knowledge, they allowed the perpetrator to use the restroom at the same time as other male students. Although the sexual harassment and assault in the Subia case occurred on school grounds, there is nothing in the statute or even in the Court's holding which requires that the assault or harassment occur on school property. NKC's own policies state that they will investigate and address discrimination and harassment that occurs off district property or which is unrelated to district activities. In the instant case, plaintiffs have alleged that Waltemath engaged in improper relationships with other students while teaching in another school district. Plaintiff also alleges that in the summer/fall of 2013, reports were made to defendants that Waltemath had inappropriate sexually suggestive and/or nude images of minor students on his school-issued laptop computer and cell phone.

9

Plaintiffs allege that defendants failed to adequately investigate, reprimand or terminate Waltemath despite these reports. In December 2014, Defendants received complaints that Waltemath was communicating on social media with students in violation of NKC policy. Defendants also received reports that Watemath was having inappropriate contact with students at a local community center. Plaintiffs allege that in April 2015, Waltemath was communicating with C.M. on social media in violation of NKC policy. Plaintiffs allege that between April 17, 2015 and May 22, 2015, Waltemath exchanged 5000 text messages and cell phone contacts with C.M. In May 2015, while he was still employed as a teacher, plaintiffs allege that Waltemath sexually assaulted and raped C.M. The Court finds that these allegations are sufficient to state a claim against the District for sexual harassment and denial of public accommodation under the MHRA.

### D. Alleged Misconduct of Student's Peers

NKC argues that in Count II, plaintiffs allege that the District denied C.M. the privileges of a place of public accommodation "as a result of the above-described sexual harassment." (Complaint, ¶ 53). NKC argues that Count II makes no reference to cyberbullying and does not allude to actions by other students or suggest that any student actions constituted "sexual harassment." Defendants argue that the alleged cyberbullying and harassment is only mentioned in ¶ 19 of the Complaint:

> News of Samuel Waltemath's arrest for sexual assault of C.M. became public in August and September of 2015. Since that time, C.M. has been cyber-bullied and harassed about the rape by NKC students through May 15, 2016.

Defendant argues that if plaintiffs intend to assert that the District denied C.M. public accommodation under the MHRA based on the alleged cyberbullying and

harassment of other students, then such a claim must be stated with sufficient factual support to comply with the pleading standards.

In opposition, plaintiffs state that they have adequately pleaded discrimination by fellow NKC students that created a continuing MHRA sexual harassment violation. Plaintiff state that they pled that NKC has a duty to adequately supervise its students, that NKC had policies that prohibited sexual harassment and discrimination and that NKC breached these policies by failing to adequately supervise its employees and students and allowing C.M. to be sexually harassed (Complaint ¶ 39). Plaintiffs then allege that C.M. was cyber-bullied and harassed by fellow students regarding the rape by Waltemath from August 2015 through May 15, 2016. (Complaint ¶ 19). Plaintiffs state that they pled that as a result of the sexual harassment, a hostile environment was created which denied C.M. the advantages, services and privileges of attending her school in violation of the MHRA. (Complaint, ¶ 53). Plaintiffs state that if additional factual information is needed, they would request leave to amend the Complaint to make the claim more definite.

As mentioned above, in <u>Doe ex rel. Subia</u>, the Court stated that a school district could be held liable for student-on-student sexual harassment under Section 213.065.2 where the plaintiff alleges: (1) [she] is a member of a protected group; (2) [she] was subjected to unwelcome sexual harassment; (3) [her] gender was a contributing factor in the harassment; (4) the harassment refused, withheld from, or denied or attempted to refuse, withhold from, or deny [her] any of the accommodations, advantages, facilities, services or privileges made available in the public school, or segregated or discriminated against [her] in the use thereof on the grounds of . . .sex . . .; (5) the public

school district knew or should have known of the harassment and failed to take prompt and effective remedial action. After reviewing plaintiff's Complaint, the Court finds that plaintiffs have adequately alleged a violation of MHRA against NKC based on the alleged cyberbullying and harassment of C.M. by her fellow students.

**E. Other Motions**

The Court hereby **GRANTS** NKC'S Motion for Leave to Exceed Page Limits (Doc. # 16); The Court hereby **GRANTS** Plaintiffs' Motion for Leave to File Supplemental Legal support in Opposition to Motion to Dismiss (Doc. # 48) and **GRANTS** Stephen Freeland's Motion to Withdraw as Counsel for defendants (Doc. # 69).

### IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES** Defendant North Kanas City School District ("NKC's") Motion to Dismiss (Doc. # 12); **GRANTS** NKC's Motion for Leave to File Excess Pages (Doc. # 16); **GRANTS** Plaintiff's Motion for Leave to File Supplemental Legal Support for Memorandum in Opposition (Doc. # 48) and **GRANTS** Stephen Freeland's Motion to Withdraw as Counsel for Defendants (Doc. # 69).

Date: <u>January 29, 2018</u>  **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri                     Fernando J. Gaitan, Jr.
                                          United States District Judge